*B. R. Curtis*, for the petitioners.

*C. G. Loring* and *F. C. Loring*, for the respondents.

FRANCIS B. FAY & another *vs.* JOSEPH NOBLE & others.

The subscribers for and holders of stock in a manufacturing corporation which has been defectively organized, and transacted business under such defective

organization, do not thereby become partners, general or special, in such business; and the records of such supposed corporation are not admissible against the members, as evidence of any agreement or understanding among them as to their own rights and liabilities as members of a partnership, or of the extent of authority given to their general agent, as agent of a partnership.

THIS was replevin for seventy two tons of pig iron. The defendants pleaded the general issue, and specified in defence a title in themselves under a mortgage from the West Boston Iron Company.

At the trial in the court of common pleas, before *Wells*, C. J., the following facts were in evidence: Prior to May, 1848, Leonard Fuller and one Kendall owned and carried on at Boston a machine shop and an establishment for making iron castings. On the 22d of March, 1848, they, with others, were incorporated as a manufacturing corporation, under the name of the West Boston Iron Company, for the purpose of carrying on the same business (*St.* 1848, *c.* 70, 8 Special Laws, 879); and in May, 1848, attempted to and supposed they did organize as such corporation; and Fuller and Kendall then transferred the real and personal estate employed by them in said business to the corporation, receiving payment therefor in shares of stock in the corporation. The shares so received by Fuller amounted to more than three fourths of the whole number of shares, into which the capital stock purported to have been divided. From the time of this supposed organization until November, 1848, Fuller acted as the general agent of the company, and, on the 25th of September, 1848, purporting to act in that capacity, borrowed money of the plaintiffs, gave the note of the company therefor, and conveyed the pig iron in question to the plaintiffs, as collateral security for its payment.

The plaintiffs put into the case the records of said supposed organization, and of the proceedings under the same; and contended that, from an inspection of these records, it appeared the company had not been legally organized as a corporation; and so the court ruled, against the objection of the defendants. Two witnesses, called by the plaintiffs, testified, in answer to questions by the defendants, that the proceedings

therein recorded were truly set forth. To this evidence the plaintiffs objected; but the judge admitted it as evidence of the actual agreement of the associates among themselves, whether they were to be regarded as corporators, as partners or otherwise, as to the manner in which the business should be transacted, and of the extent of the authority given to Fuller as their agent.

In November, 1848, a reorganization of the company, as a corporation, took place; and, on the 14th of that month, the corporation, so reorganized, conveyed all their property to the defendants, by the mortgage relied on by the defendants, who took possession, under this mortgage, of the iron in controversy.

The plaintiffs requested the judge to instruct the jury, among other things, that, as there had been no legal organization of the corporation at the time of the conveyance to the plaintiffs, the parties then holding shares therein, and conducting the business for their common benefit, were in law to be deemed partners, and could not, by any agreement among themselves, limit the power of the members as such, so as to affect the plaintiffs, unless knowledge of such limitation was brought home to the plaintiffs, the burden of proving which was on the defendants; that Fuller, as one of the partners, and the managing partner and principal owner, had full powers to give the notes of the company to raise money, and pledge their property for the payment thereof; and that, although Fuller dealt with the plaintiffs as agent, they were not estopped to show and avail themselves of the fact, that he was actually a partner and principal owner.

The presiding judge submitted the case to the jury, with instructions upon this point, of which the following is the material part:

" The proceedings, prior to November, 1848, did not prove a legal organization of the corporation, and consequently no corporate acts were done prior to November, 1848, when the new organization was effected. But, although not acting as a corporation, the individual associates were acting as an association connected together for the purpose of carrying on

business; this association was not necessarily a partnership, with the usual powers and liabilities of a partnership, but it was a question of fact what were the terms of this agreement of association; and it being testified and proved, that the writings offered as records of the corporation contained a true statement of the acts of the associates, these writings were admissible evidence to prove the actual agreement of the associates as between themselves; and it was for the jury, from this and other evidence, to determine what this agreement of association was. If it was a partnership, without any limitation as to the powers of the individual members, each partner had a right to bind the partnership by a contract made for partnership purposes; and, among other powers, had a right to borrow money in the name of the partnership, and pledge the partnership property as security for repayment. It was, however, competent for partners to limit the powers of individual members of the company, by an agreement that the conduct of the business should be confided wholly to the management of agents chosen for that purpose; and where this was done, a partner not selected as agent could not bind the company by an agreement with an individual who knew the fact, that the power of transacting the business of the concern had been delegated to these agents."

The jury returned a verdict for the defendants, and the plaintiffs excepted.

*G. M. Browne,* for the plaintiffs.

*S. Bartlett* and *D. Thaxter,* for the defendants.

BIGELOW, J. Upon the evidence introduced at the trial of this case in the court below, the presiding judge ruled that prior to November, 1848, there was no legal organization of the corporation called the West Boston Iron Company, and therefore no corporate acts were done prior to that time. The whole case was tried and submitted to the jury on this assumption. As this point was so ruled at the request of the plaintiffs, and as the verdict was in favor of the defendants, no exception was taken thereto, and we are not called upon to determine its correctness.

The plaintiffs contended and asked the court to rule, that, inasmuch as there had been no legal organization of said corporation prior to November, 1848, the parties holding shares in said unorganized corporation were in law to be deemed co-partners, and subject to all liabilities as such.  The court did not give this precise instruction to the jury ; but directed them in substance, that said parties, by virtue of their being sub-scribers for and holders of stock in said company, were either general copartners, with the usual powers and liabilities as such, or copartners acting under certain restrictions and limit-ations as to the rights and duties of individual members, and through an agent with limited authority ; and it was left to the jury to determine upon the nature and character of this copartnership, and also the authority of Fuller, as agent or copartner, to act in its behalf.

It seems to us, upon a careful consideration of the case, that these instructions were not warranted by the facts proved; and although they do not form the precise ground of the exceptions taken by the plaintiffs, yet we think them so erroneous, as to render it necessary to order the case to a new trial.

We are not aware of any authority, certainly none was cited at the argument, to warrant the instruction, that, in con-sequence of an omission to comply with the requisitions of law in the organization of a corporation, by which its pro-ceedings were rendered void, persons who had subscribed for and taken stock in the company, thereby became copartners. The doctrine seems to us to be quite novel and somewhat startling.  Surely it cannot be, in the absence of all fraudu-lent intent, (and none was proved or alleged in this case,) that such a legal result follows as to fasten on parties invo-luntarily, for such a cause, the enlarged liability of copart-ners ; a liability neither contemplated nor assented to by them.  The very statement of the proposition carries with it a sufficient refutation.  No such result can follow, unless a principle of law be established, founded on no authority, and required by no public exigency.  Corporations are known and recognized legal entities, with rights and powers clearly de-

fined and well understood, and wholly distinct and different from those of individuals and copartnerships. Persons who subscribe for and take stock in them are subject to certain fixed and limited liabilities, which they voluntarily assume, and these liabilites are not to be extended and enlarged, so as to affect innocent parties, beyond the letter of the law. A co-partnership cannot take upon itself the functions of a corporation, nor can a corporation or its members be made subject to the liabilities of a copartnership, in the absence of all statutory provisions imposing such liabilities. The personal liability of the members of a joint stock company or copartnership is inconsistent with the character and nature of a corporation, of which the law properly recognizes only the creature of the charter, and knows not the individuals. Ang. & Ames on Corp. 535, 536. On looking into Rev. Sts. *c.* 38 and 44, to the provisions of which the corporation in question was made subject, we find various enactments by which officers and members are made individually liable for debts contracted by corporations, in case of non-compliance with certain requisitions; but no provision is made by which such individual liability attaches, by reason of any omission to organize in the manner prescribed by law. The statute, it is true, prescribes the mode of organization, but it annexes no penalty or liability to the neglect or omission to comply with it. We are unable to see, therefore, any principle of law, upon which the instructions given to the jury on this point can rest.

It follows, as a necessary consequence of what we have already said, that the records of the corporation were improperly admitted and submitted to the jury, as evidence of an agreement or understanding among the shareholders in the corporation, as to their own rights and liabilities as members of a copartnership, and of the extent of authority given to Fuller, as agent of such copartnership. They were not made or kept for any such purpose. They were only the records and by-laws of a corporation, not the agreements of individuals, in the nature of articles of copartnership; and they could have no legitimate tendency to prove the facts for which they were offered and used at the trial.

Without examining at greater length the rulings of the court set out in the bill of exceptions, we think it manifest, that the whole trial proceeded under a misapprehension. If the court were correct in deciding, that there was no organization of the corporation, and that all its proceedings were void, the case resolved itself into a few simple elements. Being unorganized, and incompetent to act as a corporation, it could not create agents, or confer any authority on any one to act in its behalf, and therefore all those, who acted or purported to act as its agents, were acting without authority. There was no principal to appoint an agent. It is a familiar principle of law, that a person who acts as agent without authority or without a principal, is himself regarded as a principal, and has all the rights and is subject to all the liabilities of a principal. Story on Agency, § 264. If a person, purporting to act as agent of a corporation, which had no valid legal existence, makes contracts and does other acts as its agent, he becomes the principal, and is personally liable therefor. If he purchases property, as agent, without authority, the title vests in him, so far at least as regards third persons, and he has the sole right to dispose of it to others. Story on Agency, § 264 *a*, note ; *Hampton* v. *Speckenagle*, 9 S. & R. 212.

Applying this principle to the case at bar, it is very clear, that Fuller was not the agent of a copartnership, for none existed ; he was not the agent of individuals, as such, because he was not authorized so to act ; he was not the agent of the West Boston Iron Company, because if the court were right in deciding that it had never organized, and that its proceedings were void, it never had the power to appoint him agent. Clearly, then, he acted without authority from any one. If he purchased, he purchased for himself. In him only did the property vest, and as against all but the vendors, he had the sole right to dispose of it to others. In this view, the question of copartnership, which was submitted to the jury, was wholly immaterial, and diverted their attention from the real point in issue. We are therefore of opinion that there was a mistrial, and that the verdict must be set aside, and a new trial had at the bar of this court.